IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| **OMAR GRAYSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-cv-539-NJR-DGW |
| v. | ) | |
| | ) | |
| **SEAN FURLOW and THOMAS SPILLER,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Pending before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 23) and Plaintiff's Motion to File First Amended Complaint (Doc. 26). For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Amend and **DISMISSES as MOOT** Defendants' Motion to Dismiss (Doc. 23).

### BACKGROUND AND PROCEDURAL FACTS

Plaintiff Omar Grayson, a former Illinois Department of Corrections inmate, filed the current action alleging violation of his rights under the Religious Land and Institutionalized Persons Act (RLUIPA), and the First and Eighth amendments of the United States Constitution (Doc. 1). On February 6, 2018 Grayson filed a motion to amend his complaint in order to "more clearly frame the legal particulars" and to add "some facts that were omitted in the original complaint." (Doc. 26).

Grayson is a member of the African Hebrew Israelites of Jerusalem, a religious

organization (Doc. 1, ¶ 6).[1] As a member of that group, Grayson has taken the "Nazirite Vow" which requires him not to cut his hair (Doc. 1, ¶ 6). As a result, Grayson wore his hair in what he described in his Complaint as three-inch skinny dreadlocks (Doc. 1, ¶ 7). He was allowed to wear his hair in this manner while at Stateville Correctional Center (Doc. 1, ¶ 8). However, when he was transferred to Pinckneyville Correctional Center on September 6, 2013 he was informed he would have to remove his dreadlocks in order to take an identification photograph (Doc. 1, ¶ 9). In his proposed Amended Complaint, Grayson clarifies that he was told this by Defendant Furlow and Warden Goetting (not a defendant). He further states that despite his objections, he eventually agreed to comb out his dreadlocks, but began re-growing them immediately after the photograph was taken.

On or about February 17, 2015 Grayson was taken to Internal Affairs after he was issued a ticket for wearing his dreadlocks in a braid. His hair was manually search by Defendant Sean Furlow who took pictures and informed Grayson his hair was "deemed searchable" (Doc. 1, ¶ 15). However, three days later he was again taken to Internal Affairs and told by Furlow he would need to remove his dreadlocks in order to have another identification photograph taken (Doc. 1, ¶ 16). Grayson told the prison officials the only way to remove his dreadlocks was to either brush them out, which was extremely painful, or to cut them (Doc. 1, ¶ 17). He also told the officials, including Furlow, that to cut his hair would be breaking a religious vow.

On February 23, 2015, Grayson filed a Complaint and a Motion for Preliminary Injunction to prevent Defendants from cutting his hair (15-cv-198-NJR-DGW; Doc. 1, ¶ 18). After his Complaint was filed, Grayson was manually searched several more times and issued disciplinary

---

[1] The majority of facts stated in the proposed Amended Complaint are the same as those alleged in Grayson's original Complaint. Because the proposed Amended Complaint is not part of the docket, the Court has cited to the original Complaint where the facts in the proposed Amended Complaint are similar. Those facts included only in the proposed Amended Complaint are not cited.

tickets for his dreadlocks. On March 13, 2015 the Court issued a Report and Recommendation to the District Judge that the Motion for Preliminary Injunction be granted and Defendants be enjoined from "cutting Plaintiff's hair or from combing out his dreadlocks" (15-cv-198-NJR-DGW Doc. 18, p. 18; Doc. 1, ¶ 23). However, after the filing of the Motion for Preliminary Injunction but before entry of the Report and Recommendation, Pinckneyville officials forcible cut off Grayson's dreadlocks (Doc. 1, ¶ 24).

In his proposed Amended Complaint, Grayson states that Furlow told him he was the individual at Pinckneyville responsible for supervising the "situation of inmates with dreadlocks," but the ultimate decision about whether to cut an inmate's dreadlocks was made by Warden Spiller. It was, however, Furlow who ordered the tactical team to cut off Grayson's dreadlocks (Doc. 1, ¶ 5).

The only reason given to Grayson for the removal of his dreadlocks was the need to take an identification photograph (Doc. 1, ¶¶ 9, 16).

Grayson's proposed Amended Complaint alleges he suffered severe emotional distress, including months of mental anguish and sleeplessness leading up to and after the incident because of nightmares about corrections officers coming into his cell and cutting off his hair. Further, he states he suffered from depression, was placed on suicide watch, and was prescribed Trazadone by a psychiatrist at Pinckneyville.

Grayson was released from prison on December 3, 2015 (Doc. 1, ¶ 3) and filed the current action on May 22, 2017 (Doc. 1). Defendants filed the pending Motion to Dismiss on January 2, 2018 (Doc. 23). Grayson filed a Motion to File First Amended Complaint a month later, on February 6, 2018 (Doc. 26).[2] On April 2, 2018 Grayson informed the Court he had been arrested

---

[2] The proposed Amended Complaint, however, was not included with the motion and Grayson was granted additional time to submit the proposed Amended Complaint (Doc. 30). The proposed Amended Complaint was eventually

on a parole violation and was waiting to be picked up by the IDOC (Doc. 29). He is currently being held at Henrico County Jail in Virginia (Doc. 40).

## ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading, and that leave to amend should be freely given when justice so requires. This Circuit recognizes "the complaint merely serves to put the defendant on notice and is to be freely amended or constructively amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant." *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989). Accordingly, the Court is to liberally allow amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). However, a court may deny a party leave to amend in the presence of undue delay, futility, bad faith, prejudice, or dilatory motive. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003); *see also*: *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002). The district court's decision to grant or deny a motion for leave to file an amended pleading is "a matter purely within the sound discretion of the district court. *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004) (quoting *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 819 (7th Cir.1991)).[3]

Here, Grayson raises claims under RLUIPA as well as the First, Fourteenth and Eighth Amendments.

---

received by the Court on June 15, 2018.

[3] Because Grayson was not incarcerated at the time he filed the original complaint, or at the time he filed his Motion to Amend, the Court need not conduct a threshold review pursuant to 28 U.S.C. § 1915A. Further, because Grayson filed the Motion to Amend more than twenty-one days after service of the Motion to Dismiss, he is not entitled to amend as a matter of course. FED. R. CIV. P. 15(a)(1)(B). The Court must review the proposed amended complaint, however, for undue delay, futility, bad faith, or dilatory motive. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003); *see also*: *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002).

## Religious Land Use and Institutionalized Persons Act (RLUIPA)

To establish a claim under RLUIPA, the plaintiff bears the initial burden of showing they (1) seek to engage in an exercise of religion, and (2) the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc-2(b). Once the plaintiff produces prima facie evidence to support the claim, the defendants "bear the burden of persuasion on any [other] element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." *Id.* Additionally, the government has the burden of proving their practice "is the least restrictive means of furthering a compelling governmental interest." *Id.; Lovelace v. Lee,* 472 F.3d 174, 186 (4th Cir. 2006).

However, because the act does not create a cause of action against state employees in their personal capacity, and damages against the state are barred by the doctrine of sovereign immunity, the only relief available to prisoners under RLUIPA is injunctive. *Grayson,* 666 F.3d at 451. Further, that injunctive relief is only available where there is a continuing violation of a federal law. *Al-Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir. 1991).

It is undisputed Grayson was released from prison on December 3, 2015 (Doc. 1, ¶ 3). Normally, release from prison makes a prisoner's claims for injunctive relief moot. *Grayson,* 666 F.3d at 451. Grayson argues, however, he has violated his parole and is currently in jail in Virginia waiting for IDOC to pick him up and return him to their physical custody (Doc. 1, ¶ 3; Doc. 28, ¶¶ 6, 8; Docs. 39-40).[4] Thus, his return to IDOC is "not a remote possibility" (Doc. 28, p. 3).

The IDOC, however, has over twenty-five facilities not including Pinckneyville.[5] Even

---

[4] A copy of the proposed Amended Complaint received by the Court on June 15, 2018 appears to have been sent from Culpepper County Jail in Virginia, confirming Grayson's statements about his incarceration in Virginia.
[5] Just some of the correctional facilities currently operated by the IDOC include: Centralia Correctional Center;

assuming IDOC intends to return Grayson to Illinois, there is no reason to believe he will be placed back in the same facility. Where there is only a remote possibility a prisoner will be reincarcerated in the same state facility, and therefore subject to the same violations alleged in the Complaint, no prospective injunctive relief is available. *Ortiz v. Downey*, 561 F.3d 664, 667 (7th Cir. 2009) (referencing *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)).

Thus, Grayson's RLUIPA claim would be futile and is therefore dismissed.

**FIRST AMENDMENT**

Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered. *Turner v. Safley,* 482 U.S. 78, 89–91 (1987); *Tarpley v. Allen County, In.,* 312 F.3d 895, 898 (7th Cir. 2002). Prison officials may restrict an inmate's ability to practice his faith only so long as the restriction is reasonably related to a legitimate penological interest, such as security or economic concerns. *Al–Alamin v. Gramley,* 926 F.2d at 686.

Here, Grayson has taken a religious oath not to cut his hair (Doc. 1, ¶ 6). He alleges the only reason his dreadlocks were forcibly removed was to enable the prison to take an identification photograph (Doc. 1, ¶¶ 9, 16) and he was allowed to regrow his dreadlocks between photographs. The evidence before the Court at this early stage, therefore, suggests the prison did not have a legitimate security reason to forcible remove Grayson's dreadlocks. Thus, Grayson has sufficiently pled a claim for violation of his First Amendment right to exercise his religious beliefs.

---

Danville Correctional Center; Decatur Correctional Center; Dixon Correctional Center; East Moline Correctional Center; Graham Correctional Center; Hill Correctional Center; Illinois River Correctional Center; Jacksonville Correctional Center; Lawrence Correctional Center; Lincoln Correctional Center; Logan Correctional Center; Menard Correctional Center; Pontiac Correctional Center; Robinson Correctional Center; Shawnee Correctional Center; Sheridan Correctional Center; Southwestern Illinois Correctional Center; Stateville Correctional Center; Taylorville Correctional Center; Vandalia Correctional Center; Vienna Correctional Center; and Western Illinois Correctional Center. Illinois Department of Corrections, All Facilities, (last visited July 31, 2018) https://www2.illinois.gov/idoc/facilities/pages/allfacilities.aspx.

When a Fourteenth Amendment equal protection claim is similar to a claim under another constitutional clause, courts will analyze the complaint under the most "explicit source[s] of constitutional protection." *Graham v. Connor,* 490 U.S. 386, 395 (1989). Accordingly, Fourteenth Amendment equal protection claims that are essentially duplicative of First Amendment free exercise claims are routinely dismissed. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir.2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as a free exercise claim because the free exercise claim "gains nothing by attracting additional constitutional labels").

Here, however, Grayson claims prison officials arbitrarily discriminated against him in favor of other inmate groups (i.e., Rastafarians). Although the religious dimension of the discrimination alleged here is governed by the First Amendment, a separate claim regarding the arbitrariness of that religious discrimination may separately implicate the equal protection clause. *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988). Although the Court is not convinced this claim will ultimately succeed, Grayson had pled enough that the Court cannot say his Fourteenth Amendment claim is futile.[6]

## EIGHTH AMENDMENT

The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such gratuitous infliction of pain need not produce serious injury in order to violate the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Further, the wanton infliction of psychological pain is also prohibited. *Id.* at 16.

---

[6] Grayson also raises a claim of discrimination based on gender. He claims that the policy negatively impacts male inmates because women are allowed to wear dreadlocks. However, this claim is conclusory and unsupported. As such, he fails to state a separate constitutional claim.

Here, Grayson's proposed Amended Complaint alleges he suffered severe emotional distress. Specifically, he suffered months of mental anguish and sleeplessness leading up to the incident because of nightmares about corrections officers coming into his cell and cutting off his dreadlocks. Further, he states he suffered from depression, was placed on suicide watch, and was prescribed Trazodone by a psychiatrist at Pinckneyville; as a result of threats to cut off his dreadlocks as well as the forcible shearing of his hair.

As discussed above, the only justification provided to Grayson for forcibly removing his dreadlocks was the need to obtain a photograph for identification. He was allowed to wear his hair in dreadlocks at all other times during his incarceration at Pinckneyville. At this very early stage at least, there appears to be little penological justification for forcible removing Grayson's dreadlocks. As such, he has sufficiently alleged an Eighth Amendment claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Amend (Doc. 26) and **DISMISSES as MOOT** Defendants' Motion to Dismiss (Doc. 23). The Clerk of Court is **DIRECTED** to file Grayson's proposed Amended Complaint as the First Amended Complaint. The Court notes that, although the entirety of Grayson's proposed Amended Complaint will be filed; only the First Amendment, Eighth Amendment and Fourteenth Amendment claims will proceed in this action.

**So Ordered.**

**DATED: August 13, 2018**

**DONALD G. WILKERSON**
**United States Magistrate Judge**